**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
BEAUFORT DIVISION**

| | | |
|---|---|---|
| Gerald Viglione Niesar, *as Personal Representative of the Estate of George Francis Niesar*, | ) ) ) ) | |
| Plaintiff, | ) ) | No. 9:23-cv-04660-DCN |
| vs. | ) ) | **ORDER** |
| Christine Nemeth, | ) ) | |
| Defendant. | ) ) ) | |

This matter is before the court on defendant Christine Nemeth's ("Nemeth") motion for summary judgment, ECF No. 18; motion for a more definite statement, ECF No. 23; and motion for sanctions, ECF No. 24; and on plaintiff Gerald Viglione Niesar's ("Gerald") motion for summary judgment, ECF No. 19. For the reasons set forth below, the court denies all of the motions.

## I.  BACKGROUND

The procedural history of this case is complicated, as it is intertwined with a matter currently pending in the Beaufort County Probate Court (the "Probate Court"). The factual background, however, is largely undisputed by the parties. See ECF No. 36, Answer to 2d Amend. Compl. ¶ 2. The court will start by reciting both the procedural history and those facts which are not in dispute.[1]

This case stems from the death of George Francis Niesar ("George"). See ECF No. 31, 2d Amend. Compl. George was Gerald's brother and Nemeth's ex-husband. See

---

[1] Except where otherwise stated, the factual background in this section comes from only those paragraphs in Gerald's second amended complaint that were admitted in Nemeth's answer to that pleading. See Answer to 2d Amend. Compl. ¶ 2.

1

id. ¶¶ 1, 9.  George was also the father of two children from a prior marriage, though he and Nemeth never had children together.  Id. ¶ 7.

George and Nemeth married on March 29, 1989.  Id. ¶ 6.  During their marriage, they jointly owned a property located at 1105 Bluffton Parkway in Bluffton, South Carolina (the "Property") in a joint tenancy with rights of survivorship.[2]  2d Amend. Compl. ¶ 8.  The couple separated in 1995 and officially divorced in 2007.  Id. ¶ 9.  Their divorce agreement did not reference the Property.  Id. ¶ 10.

After their divorce, Nemeth moved to Florida.  Id. ¶ 12.  At some point, she later moved back to South Carolina and lived with George until his death, but it does not appear that the couple ever remarried.  See id. ¶¶ 13, 21.  In 2014, George and Nemeth granted an easement on the Property to the Beaufort County School District (the "District").  Id. ¶ 14.  Then, in 2016, George, this time acting without Nemeth, granted another easement for drainage to Beaufort County.  Id.

In January 2019, George and Nemeth agreed to sell the Property to the District. Id. ¶ 15.  However, they did not finalize the sale at that time.  Id.  On or around October 5, 2022, George and Nemeth's counsel informed the District that George had been hospitalized and that his outcome was uncertain.  Id. ¶ 16.  On October 7, 2022, Nemeth emailed the District a picture of a document, which indicated that Nemeth would have Power of Attorney over George's affairs if he became incapacitated.  Id. ¶ 18; see also ECF No. 20-15 (email between Nemeth's counsel and the District's counsel with photo of George's "Springing Durable Power of Attorney" attached).  Nemeth stated that

---

[2] The Property is identified by Beaufort County Tax Map Parcel Numbers R600-029-000-0034-0000 and R600-029-000-011A-0000.  2d Amend. Compl. ¶ 8.

George did not have the capacity to close the sale and that she would do so on his behalf through this Power of Attorney. 2d Amend. Compl. ¶ 18. Later that same day, George died at the hospital. Id. ¶ 17. Nevertheless, Nemeth went forward with selling the Property to the District after George's death.[3] See 2d Amend. Compl. ¶¶ 20, 23.

At some point, Nemeth informed George's family about his death, but she did not immediately file a will in the Probate Court. Id. ¶ 24. Upon learning of both George's death and the fact that no will had been filed, Gerald, with the consent of George's children, filed a petition in the Probate Court to open a probate matter for George's Estate (the "Estate"). Id. ¶ 25. On May 25, 2023, the Probate Court appointed Gerald as the personal representative of the Estate in In re: George Francis Niesar, 2023-ES-07-00417 (Beaufort Cnty. Prob. Ct. filed April 5, 2023). Id.

Gerald filed this case in this court on September 15, 2023. ECF No. 1, Compl. In his original complaint, he alleged that a one-half interest in the Property passed to the Estate upon George's death and that Nemeth's sale of the Property, and retention of all

---

[3] Gerald alleges that Nemeth signed an affidavit on October 12, 2022, five days after George's death, which indicated that George was still alive and that she therefore had authority to act on his behalf through the Power of Attorney. 2d Amend. Compl. ¶ 19. Nemeth denies this allegation because she "is unsure of when she signed the affidavit." Answer to 2d Amend. Compl. ¶ 4.

Gerald attached an email to his motion for summary judgment from Sarah Robertson ("Robertson"), who appears to be an attorney for the District, to Nemeth's counsel. ECF No. 20-15. In the email, Robertson requests that Nemeth's counsel have Nemeth "sign the [the Affidavit That Power of Attorney Is In Full Force and Effect] in the presence of two witnesses, one of whom may be the notary." ECF No. 20-15 at 66. Robertson sent this email on October 12, 2022, five days after George's death. See id. The affidavit itself is also attached to Gerald's motion. ECF No. 20-15 at 68. There is a place on the affidavit for someone to write the date next to Nemeth's signature, but it appears that Nemeth neglected to fill in the date. See id. The notary, however, did date the document on October 12, 2022. See id. In any event, the motions presently before the court do not require resolution of factual questions regarding when Nemeth—perhaps, with the assistance of her counsel—prepared, signed, or attested to the affidavit.

3

proceeds from that sale, was unlawful.  Id. ¶¶ 28–53.  He also alleged that, prior to his brother's death, Gerald had loaned George $24,000.00, which George never repaid, making Gerald a creditor of the Estate.  Id. ¶ 63–64.  Gerald therefore brought claims against Nemeth based on her sale of the Property, both on behalf of the Estate, in his capacity as personal representative, and in his individual capacity as one of the Estate's creditors.  Id. ¶¶ 28–69.

About a month later, on October 13, 2023, Nemeth's counsel sent Gerald's counsel a document purporting to be George's last will and testament (the "Purported Will").  2d Amend. Compl. ¶ 26.  The Purported Will is dated December 17, 2018.  Id.  If valid, it devises George's entire Estate to Nemeth, with Gerald as the successor beneficiary under the residuary clause—meaning, George's children would not inherit anything under this Purported Will.  Id. ¶ 27.  Prior to Gerald's counsel receiving the Purported Will from Nemeth's counsel, Gerald was unaware of the Purported Will's existence.  Id. ¶ 26.

On October 24, 2023, Gerald amended his complaint in this case to include factual allegations about Nemeth producing the Purported Will.  ECF No. 7, Amend. Compl.  Nemeth then filed an answer to the amended complaint two days later, in which she included a counterclaim against Gerald for sanctions and attorney's fees under the South Carolina Frivolous Civil Proceedings Sanctions Act ("FCPSA"), S.C. Code Ann. § 15-36-10, et seq.  ECF No. 8, Answer to Amend. Compl. ¶ 26–27.  She asserted that this case is frivolous because Gerald does not have standing to sue on behalf of the Estate and because the claim he brought against her in his individual capacity was for only

4

$24,000.00, well short of the $75,000.00 amount in controversy required to invoke this court's diversity jurisdiction.  See ECF Nos. 8; 9, 2d Amend. Answer to Amend. Compl.[4]

On January 17, 2024, shortly after the parties adjusted their pleadings in this case, Nemeth filed a revised petition in the Probate Court, in which she now seeks formal appointment as personal representative and formal testacy of the Purported Will.[5]  2d Amend. Compl. ¶ 28.  On January 31, 2024, Gerald filed an answer in the Probate Court in which he opposes Nemeth's revised petition.  Id. ¶ 29.  Gerald also asserts a counterclaim against Nemeth in Probate Court for not filing the Purported Will with the Probate Court within thirty days of George's death, as is required by S.C. Code Ann. § 62-2-901.  2d Amend. Compl. ¶ 29.

On February 8, 2024, Nemeth filed her motion for summary judgment in this case.  ECF No. 18.  Shortly thereafter, on February 12, 2024, the Honorable Heather R. Galvin, Beaufort County Probate Judge, held a status conference with the parties and stayed proceedings in the probate matter until the case in this court is concluded.  2d Amend. Compl. ¶ 30.  During the status conference, Judge Galvin specifically noted that Gerald is authorized to pursue this action on behalf of the Estate.  Id.

Gerald then filed both his motion for summary judgment and his response in opposition to Nemeth's motion in this case on February 22, 2024.  ECF Nos. 19; 20. Nemeth filed her response in opposition to Gerald's motion on March 13, 2024.  ECF No.

---

[4] Nemeth clarified the basis for her argument in an amended answer to the amended complaint, which she filed on November 1, 2023.  For some reason, she filed this document twice as ECF No. 7 and ECF No. 8.  However, these two documents appear to be identical.

[5] Nemeth filed similar petitions in the Probate Court in November and December 2023.  See ECF Nos. 20-11; 20-12.  These filings were technically deficient, and she made her operative, revised petition after that.  ECF Nos. 20-11; 20-12; 20-13.

21.  On April 16, 2024, Nemeth filed both her motion for a more definite statement and her motion for sanctions.  ECF No. 23; 24.  Gerald then amended his complaint again on April 25, 2024.  ECF No. 31, 2d Amend. Compl.  In the second amended complaint, which is now the operative complaint, Gerald no longer pursues any claims against Nemeth in his individual capacity, but he continues to pursue the claims he brings on behalf of the Estate.  See id.; ECF No. 25-2 (redlined 2d Amend. Compl.).  Gerald then responded in opposition to Nemeth's motion for a more definite statement and motion for sanctions on May 6, 2024.  ECF Nos. 34; 35.  On May 7, 2024, Nemeth filed an answer to Gerald's second amended complaint, in which she maintains her counterclaim under the FCPSA.  Answer to 2d Amend. Compl. ¶¶ 15–17.  As such, all four motions are now ripe for the court's review.

## II.  DISCUSSION

The court will consider each of the four pending motions in the order in which they were filed, starting with Nemeth's motion for summary judgment.

### A.  Nemeth's Motion for Summary Judgment

Nemeth's first motion is unfocused, vague, inartful, and erroneous, and the court strains to comprehend it.  In both the docket and the motion's caption, it is labeled as a motion for summary judgment, and its preamble indicates that it is brought according to Rule 56.  ECF No. 18 at 1.  Perplexingly, however, each of the six numbered paragraphs in the body of the motion inexplicably begins with a citation to some other procedural rule or statute, but none of these legal authorities govern motions for summary judgment. The first paragraph of Nemeth's motion begins with the words, "FRCP Rule 12(b)(1)," and then proceeds to a three-sentence argument.  Id. ¶ 1.  Paragraphs two through four

6

state "FRCP 12(b)(6)" before raising a two- or four-sentence argument.  Id. ¶¶ 2–4.

Paragraph five states "FRCP 12(b)(8)" before raising a two-sentence argument.  Id. ¶ 5.

Finally, paragraph six states "28 U.S.C. 1447(d)" before raising a one-sentence argument.

Id. ¶ 6.

　　　In consequence, it is unclear whether Nemeth, in fact, brings a motion for

summary judgment at all.  In any event, the court infers from the curious citations in her

elusive filing that Nemeth intended to make a motion for dismissal or remand rather than

one for summary judgment.[6]  The court will therefore consider paragraph one as if it were

a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1), paragraphs two

through five as a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6),[7] and

paragraph six as if it were a motion to remand under 28 U.S.C. § 1447.  Yet even this

generous construction of Nemeth's chaotic ramblings is not enough to save her woefully

defective arguments.

---

　　　[6] In this court, motions must generally be accompanied by a supporting
memorandum.  See Local Civ. Rule 7.04 (D.S.C.).  Citations to appropriate legal
authority are also helpful.  Perhaps the court's confusion could have been alleviated if
counsel had complied with this rule.
　　　[7] Paragraph five of Nemeth's motion indicates that it is brought pursuant to
"FRCP 12(b)(8)."  ECF No. 18 ¶ 5.  Throughout this motion and the others currently
pending before the court, Nemeth appears to have confused the Federal Rules of Civil
Procedure with the South Carolina Rules of Civil Procedure.  Under South Carolina Rule
of Civil Procedure 12(b)(8), a court may dismiss a case when "another action is pending
between the same parties for the same claim."  S.C. R. Civ. P. 12(b)(8); see also Cricket
Cove Ventures, LLC v. Gilland, 701 S.E.2d 39, 44–45 (S.C. Ct. App. 2010) (discussing
the narrow application of S.C. R. Civ. P. 12(b)(8)).  This provision does not exist under
the Federal Rules of Civil Procedure, as Federal Rule of Civil Procedure 12(b) has only
seven subparts.  See Fed. R. Civ. P. 12(b).  Consequently, the court construes paragraph
five of Nemeth's motion as if it were brought pursuant to Federal Rule of Civil Procedure
12(b)(6).

### 1. Subject Matter Jurisdiction

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) represents a challenge to the court's subject matter jurisdiction. Arbaugh v. Y & H Corp., 546 U.S. 500, 507 (2006). Pursuant to Rule 12(h)(3), "[i]f the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3). Lack of subject matter jurisdiction may be raised at any time by a party or the court. See Arbaugh, 546 U.S. at 506–07. "When a Rule 12(b)(1) motion challenge is raised to the factual basis for subject matter jurisdiction, the burden of proving subject matter jurisdiction is on the plaintiff." Richmond, Fredericksburg & Potomac R.R. Co. v. United States, 945 F.2d 765, 768 (4th Cir. 1991).

In deciding such a motion, "the district court may regard the pleadings as mere evidence on the issue and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." In re KBR, Inc., Burn Pit Litig., 744 F.3d 326, 333 (4th Cir. 2014) (internal quotation marks omitted). When determining whether subject matter jurisdiction is present, the court applies the standard applicable to motions for summary judgment where the nonmoving party must set forth specific facts beyond the pleadings to show that a genuine issue of material fact exists. Richmond, 945 F.2d at 768 (citing Trentacosta v. Frontier Pac. Aircraft Indus., Inc., 813 F.2d 1553, 1559 (9th Cir. 1987)). "The moving party should prevail only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." Id.

Under 28 U.S.C. § 1332(a), a federal district court has "original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000,

8

exclusive of interest and costs, and is between . . . citizens of different States." 28 U.S.C. § 1332(a). Nemeth argues that this court does not have jurisdiction over this case because the amended complaint stated that Gerald was personally owed $24,000 from George's Estate, and this is less than the $75,000 amount in controversy required for the court to exercise diversity jurisdiction. ECF No. 18 ¶ 1 (citing 28 U.S.C. § 1332).

By virtue of the second amended complaint, Gerald is no longer pursuing his individual cause of action for recovery of the alleged $24,000 debt in this court. See 2d Amend. Compl. Moreover, a careful reading of the second amended complaint (or the first amended complaint for that matter) indicates that the Estate is alleging that it is entitled to half of the proceeds from the sale of the Property. See 2d Amend. Compl. ¶¶ 34, 40, 43, 48, 55, 63. Nemeth allegedly sold the Property for $886,000.00, id. ¶¶ 22, 35, 43, and Gerald therefore seeks $443,000.00, plus prejudgment and post-judgment interest, ECF No. 20 at 12. Thus, the amount in controversy requirement is satisfied. See 2d Amend. Compl. ¶¶ 34, 40, 43, 48, 55, 63; 28 U.S.C. § 1332.

There is also complete diversity of citizenship among the parties of this case. Nemeth is a citizen of North Carolina, 2d Amend. Compl. ¶ 2; Answer to 2d Amend. Compl., and Gerald is considered a citizen of South Carolina because he brings this action on behalf of George's Estate, see 2d Amend. Compl. ¶ 1 (alleging that George died a citizen of South Carolina); Answer to 2d Amend. Compl. ¶ 2 (admitting the allegations in paragraph 1 of the second amended complaint); 28 U.S.C. § 1332(c)(2) ("For the purposes of this section and section 1441 of this title . . . the legal representative of the estate of a decedent shall be deemed to be a citizen only of the same State as the

decedent."). Thus, this court has diversity jurisdiction over this case, and the court denies Nemeth's challenge to the court's subject matter jurisdiction.[8] See § 1331.

### 2. Failure to State a Claim

A Rule 12(b)(6) motion for failure to state a claim upon which relief can be granted "challenges the legal sufficiency of a complaint." Francis v. Giacomelli, 588 F.3d 186, 192 (4th Cir. 2009) (citations omitted); see also Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992) ("A motion to dismiss under Rule 12(b)(6) . . . does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses."). To be legally sufficient, a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A Rule 12(b)(6) motion should not be granted unless it appears certain that the plaintiff can prove no set of facts that would support his claim and would entitle him to relief. Mylan Lab's, Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993).

When considering a Rule 12(b)(6) motion, the court should accept all well-pleaded allegations as true and should view the complaint in a light most favorable to the plaintiff. Ostrzenski v. Seigel, 177 F.3d 245, 251 (4th Cir. 1999); Mylan Lab's, 7 F.3d at 1134. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft

---

[8] Though Nemeth does not argue that this case is within the probate exception to the court's diversity jurisdiction, Gerald asserts that this exception does not apply. ECF No. 20 at 9. The probate exception bars the exercise of federal jurisdiction over two types of claims: (1) those seeking to probate or annul a will, or to administer a decedent's estate and (2) those seeking to dispose of property that is in the custody of the state probate courts. Marshall v. Marshall, 547 U.S. 293, 311–12 (2006). Neither party has asked this court to probate or annul the Purported Will or to administer George's Estate, and the Property at issue in this case is not in the custody of the Probate Court. Thus, Gerald is correct that the probate exception does not apply.

v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. "Although the evaluation is generally limited to a review of the allegations of the complaint itself, and documents attached to the complaint as exhibits, a court may properly take judicial notice of matters of public record without converting a motion to dismiss into a motion for summary judgment." Megaro v. McCollum, 66 F.4th 151, 157 (4th Cir. 2023).

The court construes paragraphs two through five of Nemeth's motion, as an argument that the claims against her should be dismissed pursuant to Rule 12(b)(6). See ECF No. 18 ¶¶ 2–5. The entirety of her second paragraph reads: "At the time of George F. Niesar's death, the Plaintiff was not an heir of George Francis Niesar (Will, attachment A). This is a probate matter." ECF No. 18 ¶ 2. Though there is not any additional argument or citations to legal authorities provided, the citation to Gerald's Purported Will seems to indicate that Nemeth believes Gerald cannot bring this action because he is not named as a beneficiary in the Purported Will.[9] Thus, Gerald construes this paragraph as an argument that he does not have standing to pursue this case. ECF No. 20 at 8. He argues that Nemeth is "plainly wrong" because the South Carolina Probate Code explicitly confers standing to personal representatives to pursue claims on behalf of an estate. Id.

---

[9] As Gerald notes, the term "heir" is defined in the South Carolina Probate Code as only those "who are entitled under the statute of intestate succession to the property of a decedent." S.C. Code Ann. § 62-1-201(20) (emphasis added).

11

Assuming that Nemeth is indeed trying to raise a standing argument, she is incorrect, and Gerald has standing, as personal representative, to pursue a claim on behalf of the Estate.  If Nemeth doubts this conclusion, the court refers her to the plain language of the South Carolina Probate Code.  See S.C. Code Ann. § 62-3-703(c) ("[A] personal representative of a decedent domiciled in this State at his death has the same standing to sue and be sued in the courts of this State and the courts of any other jurisdiction as his decedent had immediately prior to death."); see also 2d Amend. Compl. ¶ 30 ("[The Probate Court] also confirmed that Gerald is authorized to pursue this action on behalf of the Estate in this Court."); Answer to 2d Amend. Compl. ¶ 2 (admitting the allegations in paragraph 30 of the second amended complaint); Fed. R. Civ. P. 17(a)(1)(A)–(B) (stating that an executor or administrator may prosecute an action "in the name of the real party in interest").  Therefore, to the extent Nemeth is arguing that Gerald does not have standing to pursue a claim on behalf of the Estate, her motion is denied.  Additionally, to the extent Nemeth is arguing that Gerald does not have standing to pursue a claim in his personal capacity, her motion is denied as moot because Gerald no longer pursues a claim in that capacity.  See 2d Amend. Compl.

Next, in paragraphs three and four of her motion, Nemeth argues that she co-owned the Property with George as joint tenants with rights of survivorship and that such rights did not terminate upon their divorce.  ECF No. 18 ¶¶ 3–4.  She therefore asserts that Gerald is incorrect when he alleges that, "[a]fter George and [Nemeth] divorced their joint tenancy with right of survivorship in the property severed."  ECF No. 18 ¶ 4

(quoting Amend. Compl. ¶ 36).[10]  She argues that Gerald's allegation that the joint

tenancy severed is "nonsense, especially as George named [Nemeth] sole heir in his 2018

Last Will and Testament."  ECF No. 18 ¶ 4.

Once again, Nemeth makes her argument without citation to legal authority; once

again, Nemeth is mistaken in her conclusion; and once again, Nemeth's error could have

been avoided had she taken the time to briefly review the plain language of the

appropriate statutes before filing her motion.  If she had done so, she would have

discovered that, in South Carolina, a married couple's joint tenancy is severed upon

divorce unless a court orders otherwise.  See S.C. Code Ann. §§ 27-7-40(a)(vii) ("Any

joint tenancy in real estate held by a husband and wife with no other joint tenants is

severed upon the filing of an order or decree dissolving their marriage and vests the

interest in both the parties as tenants in common, unless an order or decree of a court of

competent jurisdiction otherwise provides."); 62-2-507(c)(2) ("Except as provided by the

express terms of a governing instrument, a court order, or a contract relating to the

division of the marital estate made between the divorced individuals before or after the

marriage, divorce or annulment, the divorce or annulment of a marriage . . . severs the

interests of the former spouse in property held by them at the time of the divorce or

annulment as joint tenants with the right of survivorship so that the share of the decedent

passes as the decedent's property and the former spouse has no rights by survivorship.

This provision applies to joint tenancies in real and personal property . . . .").  Nemeth has

---

[10] The language Nemeth quotes comes from paragraph thirty-six of Gerald's first amended complaint.  See ECF No. 18 ¶ 4 (quoting Amend. Compl. ¶ 36).  The exact same language is found in paragraph thirty-three of the now-operative second amended complaint.  See 2d Amend. Compl. ¶ 33.

provided no reason to suspect that her joint tenancy with survivorship rights was not severed upon her divorce and, in fact, concedes that the Divorce Decree between her and George did not mention the Property.  See ECF No. 18 ¶¶ 3–4.  As such, this portion of her motion is denied.

Finally, Nemeth argues that this case should be dismissed or remanded because the same action is already pending in the Probate Court.  ECF No. 18 ¶ 5.  The matter in Probate Court, however, does not bar this court from exercising jurisdiction.  "Indeed, with regard to parallel state and federal proceedings, the Supreme Court has held, over and over . . . that in the usual case the federal court must hear the cases that fall within their jurisdiction."[11]  McLaughlin v. United Va. Bank, 955 F.2d 930, 934 (4th Cir. 1992).  As such, the pendency of the action in Probate Court does not bar this court from asserting jurisdiction over this action, and this portion of Nemeth's motion is denied.

### 3.  Remand Pursuant to 28 U.S.C. § 1447(d)

Nemeth asserts, without any additional argument, that "[t]his case should be remanded to Beaufort County Probate Court pursuant to 28 U.S.C. § 1447(d) for lack of subject matter jurisdiction."  ECF No. 18 ¶ 6.  This portion of her motion is denied for

---

[11] Of course, there are limited exceptions to this rule, such as abstention under the Colorado River doctrine, but this doctrine only applies in the most "extraordinary circumstances."  McLaughlin, 955 F.2d at 934 (citation and internal quotation marks omitted) (citing Colorado River Water Conservation Dist. v. United States, 424 U.S. 800, 818–18 (1976)).  Several factors must be considered when determining whether a court should abstain under this doctrine, including: "1) the preference accorded to the first court assuming jurisdiction over a res; 2) the relative inconvenience of the state and federal forums; 3) the need to avoid piecemeal litigation; . . . 4) the relative order of the state and federal suits[, 5)] whether a federal question is presented in the case, and [6)] whether either the state or federal suit 'was a contrived, defensive reaction' to the other."  Id. at 934–35.  Nemeth has offered no argument as to why the Colorado River abstention doctrine should apply in this case, and the Probate Court has currently stayed proceedings pending resolution of this action.  2d Amend. Compl. ¶ 30.

two reasons.  First, for reasons previously articulated, this court has subject matter jurisdiction over this case.  Second, § 1447(d) applies only to cases that were removed from state court.  See § 1447(d) ("An order remanding a case to the State court <u>from which it was removed</u> is not reviewable on appeal . . . ." (emphasis added)).[12]  By definition, it is not possible for a federal court to remand a case back to state court when the case was never in state court in the first place.  See <u>Remand</u>, <u>Black's Law Dictionary</u> (11th ed. 2019) (defining remand as "[t]he act or an instance of sending something (such as a case, claim, or person) <u>back</u> for further action" (emphasis added)); <u>see also</u> <u>Pekin Ins. Co. v. C.R. Onsrud, Inc.</u>, 2020 WL 2334084, at *3 (W.D.N.C. May 11, 2020) ("[T]his case has never been in state court so there is no removal for the Court to review nor is there any state court to which the case could be 'remanded' or returned."); <u>Singletary v. Aiken Cnty. Code Enf't Div.</u>, 2023 WL 1786264, at *5 (D.S.C. Jan. 5, 2023) ("The undersigned therefore recommends that Defendants' Motion to Remand State Law Claims be dismissed without prejudice, as Singletary's claims were never removed in the first instance" (emphasis and citation omitted)), <u>report and recommendation adopted</u> 2023 WL 1785751 (D.S.C. Feb. 6, 2023).  Thus, this portion of Nemeth's motion is denied.

In sum, the court denies Nemeth's motion to dismiss or remand in its entirety.

---

[12] Beyond that, even if remand pursuant to § 1447 were appropriate in this case, Nemeth still would have failed to have identified the statute's appropriate subsection, as subsection (d) governs <u>appellate review</u> of a district court's decision to remand a case back to state court.  § 1447(d); <u>see also</u> <u>Things Remembered, Inc. v. Petrarca</u>, 516 U.S. 124, 127–28 (1995).

### B. Gerald's Motion for Summary Judgment

Gerald is seeking summary judgment on his first cause of action for conversion. ECFR No. 20 at 12. To prevail in a conversion claim under South Carolina law, "a plaintiff must prove (1) an interest by the plaintiff in the thing converted; (2) the defendant converted the property to his or her own use; and (3) the use was without the plaintiff's permission." Builders Source Direct v. Cosco Logistics (Ams.) Inc., 2008 WL 11349731, at *11 (D.S.C. Mar. 25, 2008).

Gerald argues that the evidence in the record establishes each of these elements. As for an interest in the thing converted, Gerald argues that the Estate had an interest in the Property because the Estate owned a one-half interest in the Property by virtue of George's tenancy in common after his divorce, and therefore the Estate has an interest in one-half of the proceeds of that sale. ECF No. 20 at 13. Gerald then asserts that the second element is satisfied because it is undisputed that Nemeth sold the Property to the District and did not distribute the proceeds to the Estate. Id. (citing ECF Nos. 20-5; 20-6). Finally, Gerald argues that it is uncontroverted that the Estate did not give Nemeth permission to sell the Property, meaning that the third conversion element is satisfied. Id. at 13–14. As such, Gerald argues that summary judgment should be granted on the conversion claim and that the court should order Nemeth to pay $443,000.00—what he calculates to be half of the proceeds from the sale of the Property plus prejudgment and post-judgment interests—to the Estate. Id. at 14.

In response, Nemeth simply recycles the now-familiar positions she takes on the other motions pending before the court. She argues that summary judgment should not be granted because Gerald was not named as an "heir" in George's will. ECF No. 21 at

2. Therefore, she says that he does not have standing to bring the claim and that this matter should be remanded to the Probate Court.[13]  ECF No. 21 at 2.

As previously explained, Gerald has standing to bring this claim on behalf of the Estate, and this case cannot be remanded to the Probate Court. Nevertheless, the court denies Gerald's motion for reasons unrelated to Nemeth's nonsensical and unhelpful response.

Under South Carolina law, a cause of action for conversion cannot be sustained when the thing converted is an interest in real property.  See Equitable Tr. Co. of Columbia v. Columbia Nat'l Bank, 142 S.E. 811, 813–14 (S.C. 1928) ("The cause of action set up by the plaintiff is one in tort for damages for conversion, and such an action does not lie for an exercise of dominion or control over real property or the assumption of the right to dispose of the same, even though the exercise of such dominion or the assumption of such right is in denial of the rights of a true owner."); Hawkins v. City of Greenville, 594 S.E.2d 557, 566 (S.C. Ct. App. 2004) ("It is well settled that a conversion action does not lie when alleging the exercise of dominion or control over real property."); Rains v. Chase Bank USA, N.A., 2014 WL 12538163, at *4 (D.S.C. Mar. 21, 2014), aff'd sub nom. Wade v. Chase Bank, USA N.A., 583 F. App'x 291 (4th Cir. 2014).  Thus, even if Gerald is correct that Nemeth acted unlawfully when she disposed of the Property without providing any of the proceeds to the Estate, conversion is not the

---

[13] In support of this argument, Nemeth cites only two sources of legal authority. ECF No. 21 at 2.  The first is Article III, Section 2, Clause 1 of the United States Constitution (the often-called "cases and controversies clause").  Id.; see U.S. Const. art. III, § 2, cl. 1.  The second is the United States Supreme Court's decision in Allen v. Wright, 468 U.S. 737, 752 (1984)), which she cites for the proposition that "[f]ederal courts may exercise power only 'in the last resort, and as a necessity[.']"  ECF No. 21 at 2.

proper cause of action for vindication of the Estate's rights.[14]  The court therefore denies

Gerald's motion for summary judgment.

### C.  Nemeth's Motion for More Definite Statement

In her motion for a more definite statement, Nemeth challenges the sufficiency of

Gerald's response to her Request to Admit Number One.  ECF No. 23 at 1.  In this

Request, Nemeth asked, "The attached copy of the 2018 Will of George Niesar is a true

copy of a real document?"  ECF No. 23-1.  Gerald responded,

> Plaintiff lacks personal knowledge as to whether the attached purported
> copy of the 2018 Will of George Niesar . . . is a true copy of a real
> document, and, thus, the information known or readily obtainable by
> Plaintiff is insufficient to enable Plaintiff to admit or deny this Request after
> reasonable inquiry.  Plaintiff further responds that Defendant had not
> submitted the Purported Will to probate following George Niesar's death
> on October 7, 2022, until over a year after George Niesar's death.

Id.

Nemeth notes that she submitted the Purported Will to the Probate Court on

November 15, 2023, and asserts that Gerald, as the personal representative of the Estate,

"should not therefore deny the existence and authenticity of the Will leaving everything

to the Defendant."  ECF No. 23 at 2.  She argues that Gerald's response to her Request to

Admit was "evasive" and "interposed solely for delay."  ECF No. 23 at 1.

---

[14] Even if Gerald's brief could be read as an argument that the thing converted
was the proceeds from the sale of the Property, rather than the Property itself, see ECF
No. 20 at 13–14, the second amended complaint clearly alleges that the item converted
was the Property, see 2d Amend. Compl. ¶ 36 ("[Nemeth] exercised unauthorized control
over the Property and converted the Property completely for her own use through the
sale.").  Moreover, while the court has not been able to locate any cases in which South
Carolina courts have ruled on whether conversion is the proper cause of action when the
thing converted was the proceeds from the sale of real property, at least one court in
another jurisdiction has faced the issue and ruled that a conversion action cannot lie in
such instances.  See Marin v. Wells Fargo, N.A., 2021 WL 5049111, at *9–10 (D.S.D.
Sept. 27, 2021).

In response to the motion, Gerald asserts that he has never been in possession of the Purported Will, that Nemeth did not produce the Purported Will for the Probate Court until over a year after George's death, and that the Probate Court has not ruled on whether the Purported Will is George's valid will. ECF No. 34 at 4. Therefore, Gerald argues that his response to the Request to Admit is sufficient because it specifically describes why he can neither admit nor deny, as required by Rule 36. Id.

> Rule 36 states:
>
> If a matter is not admitted, the answer must specifically deny it or state in detail why the answering party cannot truthfully admit or deny it. A denial must fairly respond to the substance of the matter; and when good faith requires that a party qualify an answer or deny only a part of the matter, the answer must specify the part admitted and qualify or deny the rest. The answering party may assert lack of knowledge or information as a reason for failing to admit or deny only if the party states that it has made reasonable inquiry and that the information it knows or can readily obtain is insufficient to enable it to admit or deny.

Fed. R. Civ. P. 36(a)(4).[15]

The court does not understand Nemeth's argument for this motion. First, Gerald, very clearly, states in his filings in the Probate Court that he does not have sufficient knowledge to say whether or not the Purported Will is valid. See ECF No. 20-14 at 4. Second, the court is not sure how his being personal representative of the Estate qualifies him to determine the validity of a will, about which he has no prior knowledge. Gerald's response to the Request to Admit is adequate under Rule 36 because it explains that he lacks sufficient information to determine whether the Purported Will is indeed George's

---

[15] Nemeth bases her motion on the equivalent rule under the South Carolina Rules of Civil Procedure. See ECF No. 23 at 1 (citing S.C. R. Civ. P. 36 and 37). Nemeth is again reminded that this case is currently in federal court, meaning the Federal Rules of Civil Procedure generally apply. See Wright v. Cent. States, Se. & Sw. Areas, Health & Welfare Fund, 440 F. Supp. 1235, 1236 (D.S.C. 1977).

valid will.  See ECF No. 23-1; Fed. R. Civ. P. 36(a)(4).  As such, the court denies

Nemeth's motion for a more definite statement.

### D.  Nemeth's Motion for Sanctions

Much like the other motions Nemeth brings before the court, the purported legal

and factual justifications for Nemeth's motion for sanctions are nonsensical.  As for the

motion's legal footing, Nemeth indicates in the preamble that she is moving pursuant to

Federal Rule of Civil Procedure 11, but she later indicates that the motion is brought

pursuant to not just Rule 11 but also 28 U.S.C. § 1927, and South Carolina's FCPSA.

ECF No. 24 at 1, 3.  However, she does not provide any argument or reference to 28

U.S.C. § 1927 aside from this one lonely citation, and the only argument she makes

pursuant to the FCPSA is based on a version of the statute that was repealed nearly

twenty years ago.[16]  See ECF No. 24 at 3–4.  Because Nemeth has completely abdicated

her responsibility to make any argument based on either 28 U.S.C. § 1927 or the current

version of the FCPSA, the court denies her motion to the extent it is based on either of

---

[16] Nemeth bases her motion on the version of the FCPSA that she quotes from the
South Carolina Court of Appeal's decision in Kilcawley v. Kilcawley, 440 S.E.2d 892,
893 (S.C. Ct. App. 1994).  ECF No. 24 at 3.  Yet the South Carolina General Assembly
repealed that version of the FCPSA and replaced it with the current version of the statute
in 2005.  See Economic Development, Citizens, and Small Business Protection Act of
2005, H.B. 3008, 116th Sess. 2005 S.C. Act No. 27, § 5.  Thus, Nemeth has provided no
argument based on the FCPSA in its current, operative form.  See ECF No. 24 at 3–4.
    If counsel plans to reference statutory text in the future, the court recommends
locating and quoting from the statute directly, rather than relying on a recitation of the
statutory text found in a thirty-year-old case.

these two statutes.[17]  The court will therefore analyze Nemeth's motion exclusively to the extent it is brought under Federal Rule of Civil Procedure 11.[18]

---

[17] Even if Nemeth's motion were properly supported by arguments based on either 28 U.S.C. § 1927 or the FCPSA, it would still be denied.  Section 1927 provides:

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

28 U.S.C. § 1927.  The motion is denied to the extent it is brought pursuant to this section because there is no evidence that Gerald's counsel "multiplie[d] the proceedings in [this] case unreasonably [or] vexatiously."  See id.

Likewise, even if Nemeth had managed to identify the operative version of the FCPSA, the court still would deny her motion.  The current version of the FCPSA provides:

> At the conclusion of a trial and after a verdict for or a verdict against damages has been rendered or a case has been dismissed by a directed verdict, summary judgment, or judgment notwithstanding the verdict, upon motion of the prevailing party, the court shall proceed to determine if the claim or defense was frivolous.

S.C. Code Ann. § 15-36-10(C)(1) (emphasis added).  Thus, "[m]otions made pursuant to the FCPSA are post-trial motions," Holmes v. E. Cooper Cmty. Hosp., Inc., 758 S.E.2d 483, 495 (S.C. 2014), and assertions for FCPSA violations are unripe before the conclusion of the case, see State Farm Fire & Cas. Co. v. Lang, 2021 WL 3856187, at *6 (D.S.C. Aug. 27, 2021) (dismissing a FCPSA counterclaim without prejudice as unripe).  Thus, to the extent Nemeth grounds her motion in the FCPSA, the court denies the motion because it is unripe at this stage in the proceedings.  See S.C. Code Ann. § 15-36-10.

[18] The only cases Nemeth cites in support of sanctions under Rule 11 are the South Carolina Court of Appeal's decision in Kilcawley, 440 S.E.2d at 893 n.2, and several cases that were decided by the United States Court of Appeals for the Sixth Circuit.  See ECF No. 24 at 3–4.  The language Nemeth quotes from Kilcawley clearly indicates that the court is discussing Rule 11 of the South Carolina Rules of Civil Procedure, not the Federal Rules of Civil Procedure.  See ECF No. 24 at 4 ("We take this opportunity to remind the bar of the significance of an attorney's signature on a pleading or motion under Rule 11(a), SCRCP." (emphasis added) (quoting Kilcawley, 440 S.E.2d at 893 n.2)).  Moreover, the cases decided by the Sixth Circuit, while persuasive, are not binding on this court.  Consequently, Nemeth has not cited to a single case that is mandatory precedent on this court in support of her motion for sanctions.

Rule 11 requires that an attorney or unrepresented party certify in all pleadings, written motions, or other papers

> that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
>
>> (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
>>
>> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;
>>
>> (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and
>>
>> (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

Fed. R. Civ. P. 11(b). The court is empowered to impose sanctions, either on its own initiative or on a party's motion, for violation of this rule. Fed. R. Civ. P. 11(c).

The factual basis of Nemeth's motion is also unclear. She begins the motion, in a section labeled "procedure," by repeating the various arguments she raised when discussing the three other motions currently pending before the court. See ECF No. 24 at

---

The court further notes that several of Nemeth's citations in her motion for sanctions are exceptionally confusing and difficult to follow. For instance, despite citing multiple cases from the Sixth Circuit, one of her citations to a decision of that court follows a completely different format from the others. See ECF No. 24 at 4. This citation does not mention the court that made the decision; whether the decision was published; or if it was published, where in the federal reporter the decision can be found. Nemeth's citation to Kilcawley is similarly bewildering. Her first citation to this case does not mention the court that made that decision, and her second does not follow any standard method of pinpointing the portion of the opinion to which she is alluding. See id. at 3–4. While the court is not typically a stickler for proper citations, the court could better follow Nemeth's argument if it were not simultaneously trying to discover the secret of Nemeth's cryptic references.

1–2.  She, once again, asserts that this case should be dismissed or remanded back to state court because (1) the amount in controversy requirement to invoke this court's diversity jurisdiction is not met because Gerald seeks recovery of $24,000, (2) Gerald is not listed as an "heir" in George's Purported Will, (3) the Property was deeded to George and Nemeth as joint tenants with survivorship rights, and (4) there is another action pending between these same parties in the Probate Court.  Id.  Then, in a section labeled "sanctions," she asserts that Gerald's counsel should "be ordered to pay all [her] attorney fees in defending this action in this Honorable Court."  Id. at 3.  However, she does not include any specific accusations of wrongdoing against Gerald's counsel.[19]  Instead, she simply "requests the court determine whether [Gerald's] attorney conducted an adequate pre-filing investigation as to the plausibility of his allegations and the legal and factual merits of his claims and why this has not needlessly prolonged the proceedings."  Id.  From this, the court infers that Nemeth believes sanctions are appropriate because Gerald's claims are frivolous for the reasons listed in the first section of her motion.

    As previously explained, the court has jurisdiction over this case, and Nemeth is simply incorrect when she argues that this case should be, or even can be, remanded to state court.  Beyond that, neither the existence of the Purported Will nor the fact that she

---

[19] The closest Nemeth comes to specifically alleging wrongdoing is when she asserts that Gerald's counsel failed to ask her whether George had a valid will prior to filing the action in Probate Court.  ECF No. 24 at 4.  The court finds that this is not a basis for sanctions.  Even if it were, this argument mentions only Gerald's counsel's investigation prior to filing an action in a different court.
    Nemeth also fails to identify any specific factual misstatement in any of Gerald's pleadings or court filings.  Indeed, rather than denying the existence of George's will, the second amended complaint merely alleges that Gerald initiated proceedings in the Probate Court upon finding that no will had yet been filed and that the 30-day deadline for doing so had expired, 2d Amend. Compl. ¶¶ 24–25, and Nemeth has admitted that this allegation is true, Answer to 2d Amend. Compl. ¶ 2.

23

and George once owned the Property as joint tenants with survivorship rights makes Gerald's claims frivolous.  As such, Nemeth's motion for sanctions is denied.[20]

### III.   CONCLUSION

For the foregoing reasons, the court **DENIES** Nemeth's motion for summary judgment, **DENIES** Gerald's motion for summary judgment, **DENIES** Nemeth's motion for a more definite statement, and **DENIES** Nemeth's motion for sanctions.

**AND IT IS SO ORDERED.**

_____
**DAVID C. NORTON**
**UNITED STATES DISTRICT JUDGE**

**July 15, 2024**
**Charleston, South Carolina**

---

[20] The court reminds Nemeth's counsel of the possible consequences of filing a motion for sanctions pursuant to Federal Rule of Civil Procedure 11.  Under this rule, the court has authority to award "the prevailing party the reasonable expenses, including attorney's fees, incurred for the motion."  Fed. R. Civ. P. 11(c)(2) (emphasis added).  In other words, there are circumstances in which a party who moves for sanctions pursuant to this rule and loses may have to pay the non-movant's expenses in defending the motion.  See, e.g., Commonwealth Grp.-Winchester Partners, L.P. v. Winchester Warehousing, Inc., 2007 WL 4210455, at *4 (W.D. Va. Nov. 27, 2007).

What's more, Nemeth's counsel has himself made numerous errors in this case to include: violating this court's local civil rules, failing to provide a legal memorandum in support of a motion, supporting motions with legal arguments and reasoning that are scant or completely absent, improperly citing to the South Carolina Rules of Civil Procedure, citing to a non-existent Federal Rule of Civil Procedure, seeking to remand a case to state court that was never in state court in the first place, failing to read or comprehend the plain language of the appropriate governing statutes, and citing to a statute that was repealed in 2005.  With blunders so obvious and so avoidable, counsel should be especially cautious when hurling stones lest his glass house come plummeting down.